**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **DANIELLE ROSE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:15-cv-00415** |
| ) | **Judge Haynes / Knowles** |
| **CLARKSVILLE-MONTGOMERY COUNTY** ) | |
| **COMMUNITY ACTION AGENCY,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

This matter is before the Court upon Defendant's "Motion to Dismiss" Plaintiff's original Complaint (Docket No. 5) and a "Partial Motion to Dismiss the Amended Complaint" (Docket No. 19).  Both Motions are accompanied by supporting Memoranda of Law.  Docket Nos. 6, 20.

Plaintiff has filed Responses to both Motions.  Docket Nos. 15, 23.

As an initial matter, Plaintiff, with Leave of Court (Docket Nos. 16, 17), filed her Amended Complaint on July 24, 2015 (Docket No. 18).  Plaintiff's Amended Complaint supercedes her original Complaint and is now the operative Complaint in this action; accordingly, Defendant's "Motion to Dismiss" Plaintiff's original Complaint (Docket No. 5) should be DENIED AS MOOT.

As noted, Plaintiff filed her Amended Complaint on July 24, 2015.  Docket No. 18. Plaintiff alleges that Defendant violated her rights under 42 U.S.C. § 1982; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e; the Americans with Disabilities Act of 1990

and as amended, 42 U.S.C. §12111, et seq.; the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq.; the Tennessee Human Rights Act, T.C.A. § 4-21-101; and the Tennessee Disability Act, T.C.A. § 8-50-103. *Id.* Plaintiff contends that Defendant: (1) denied her right to FMLA leave and retaliated against her for attempting to exercise her right to take that leave; (2) segregated or classified her, based upon her race, in a way that deprived her of employment opportunities and treated her less favorably than her co-workers; (3) failed to accommodate her and discriminated against her based on her actual or perceived disability; and (4) engaged in adverse employment actions as part of a knowing and intentional pattern of discrimination. *Id.* Plaintiff avers that, as a direct and proximate result of Defendant's actions, she has suffered and continues to suffer loss of income and other employment benefits, distress, humiliation, embarrassment, emotional pain, and other damages. *Id.* Plaintiff seeks compensatory and punitive damages, reinstatement, back pay, front pay, attorney's fees, costs, pre-judgment interest, "all other remedies and injunctions as are necessary and proper to eliminate the discriminatory practices of Defendant," and other such relief as the Court deems proper. *Id.*

The factual allegations of Plaintiff's Amended Complaint, in their entirety, are as follows:

7.      Plaintiff is a Caucasian woman, born on April 12, 1975.

8.      At all relevant times, Plaintiff was Defendant's employee in its Head Start program, caring for young children.

9.      Plaintiff has serious medical conditions: seizure disorder (epilepsy), GI colitis, autoimmune disease, hyperthyroidism, and rheumatoid arthritis. Plaintiff has a disability, or is perceived to have a disability, under the ADA.

10.     Plaintiff does not have difficulty performing most aspects of her job, but sometimes she needs minor assistance with

2

the children; for example, she may sometimes need to sit down due to pain in her joints.

11.     Plaintiff asked for reasonable accommodations due to her disabilities, not limited to the following: needing to sit down due to pain in her joints, needing help brushing the children's teeth due to joint pain, and needing to communicate with her medical providers on the telephone during work hours.  Plaintiff was retaliated against for asking for these accommodations by being sent home or her requests were simply denied.

12.     Plaintiff was eligible for FMLA leave because she needed intermittent leave due to a serious health condition as defined by the FMLA.

13.     Plaintiff's medical conditions require frequent visits to at least four different health care providers.  Plaintiff provided notice to her employer when she needed to take leave protected under the FMLA.

14.     Defendant made it difficult or impossible to go to some doctor appointments, despite advance notice to the Defendant.

15.     When Plaintiff turned in her updated copy of appointments on January 29, 2014, she included an important neurologist's appointment for February 10, 2014.  Defendant interfered with Plaintiff taking leave covered under FMLA and refused to let her go because a government review of the program would be occurring that day, even though qualified substitutes were available to cover for her and therefore Defendant's operation would not be affected.  Other employees are not forced to move doctor appointments.

16.     As a direct result of Defendant preventing Plaintiff from seeing her doctor on February 10, 2014, Plaintiff had to go to the emergency room the next day, February 11, 2014.  Therefore, Plaintiff incurred damages because of her denial of FMLA protected leave.

17.     Defendant has taken other adverse actions against Plaintiff

3

for missing work for medical care that was protected by the FMLA. For example, in August 2014, Plaintiff was written up twice for taking off too many days for doctor's appointments related to her medical conditions covered under the FMLA.

18. On multiple occasions, Plaintiff would ask Defendant for minor assistance/a reasonable accommodation that would relieve her pain at work, but her requests would be denied.

19. For example, one day Plaintiff asked for help during toothbrushing time for the children under her care because of pain in her legs, hips, and joints. Instead of giving her the minor, brief assistance, Defendant sent her home for the rest of the day. Other employees are not sent home for asking for assistance.

20. Defendant has disciplined Plaintiff for taking phone calls from her physicians, even after she advised her supervisors that she was expecting the calls.

21. Plaintiff was treated differently than African-American employees who use their cell phones throughout their work shift for personal use, including accessing social networks, and were not counseled or given disciplinary action.

22. Plaintiff filed a charge with the EEOC and timely filed her claim after receiving a Right to Sue Letter.

*Id.*

Defendant filed the instant "Partial Motion to Dismiss the Amended Complaint" on August, 10, 2015, arguing that "Counts One, Two, and Four of the Plaintiff's Amended Complaint fail to state a claim for relief for: (1) Interference or retaliation under the Family and Medical Act; (2) Race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, or the Tennessee Human Rights Act; or (3) Disability discrimination under the Tennessee Disability Act." Docket No. 19. Specifically, Defendant contends:

Count One's claim of FMLA interference fails as a matter of law because Plaintiff's claim that [Defendant] required her to reschedule a medical appointment to another day or time when it fell on the day of an important government review does not violate the FMLA. The Act expressly allows for rescheduling of FMLA leave for business purposes. Although the Amended Complaint generally alleges that [Defendant] denied her FMLA leave, it does not identify any other specific occasions where [Defendant] did so. Count One's FMLA retaliation claim also fails as a matter of law because the Amended Complaint does not identify any adverse employment action that Plaintiff purportedly suffered as a consequence of allegedly engaging in FMLA-protected activity. Moreover, the damages recoverable under the FMLA are strictly defined, and, according to the allegations in the Complaint, Plaintiff has not suffered any damages covered by the statute.

Count Two does not allege a *prima facie* case of reverse race discrimination under Title VII, Section 1981, or the THRA. Because [Plaintiff] is Caucasian, Sixth Circuit precedent required her to plead "background circumstances" that plausibly suggest [Defendant] discriminates against its majority employees. She has not done so. [Plaintiff's] Amended Complaint also fails to identify any adverse employment action that she purportedly suffered as a result of her race.

Count Four claims that [Defendant] discriminated against Plaintiff on the basis of an actual or perceived disability in violation of the TDA. Like her race discrimination claim, Count Four is founded on several minor incidents that do not rise to the level of an adverse employment action actionable under the TDA. It thus fails as a matter of law.

Docket No. 20.

Regarding Defendant's argument that Plaintiff failed to plead a legally sufficient claim of

FMLA interference, Plaintiff responds that, "because there were people capable of covering her

work shift, because there has been no assertion that her [specific] presence was required for the

government inspection, and because Defendant's unnecessary requirement that she reschedule a

pre-planned medical appointment for which Defendant had ample notice resulted in Plaintiff's

hospitalization," she has sufficiently alleged that Defendant interfered with her right to leave under the FMLA.  Docket No. 23.  As to Defendant's argument that Plaintiff's FMLA retaliation claim fails as a matter of law, Plaintiff responds that she "was the recipient of corrective action, namely that she was written up on two different occasions for taking too many days off."  *Id.*  Plaintiff argues that this "corrective action, is an adverse employment action, because it has the actual effect of counting against her in upcoming discussions about raises, transfers, promotions, and makes her more likely than someone without write-ups to be terminated if the need should arise."  *Id.*  Plaintiff asserts that "the impact is both real *and* economic."  *Id.* (Emphasis original.)  She contends, "the threat of being written up, much less being written up multiple times would dissuade a reasonable employee from exercising their rights under the FMLA," because, "[i]f a write-up or the possibility of one did not dissuade an employee from taking a certain action or failing to take one, employers would not utilize them as corrective measures."  *Id.*

With respect to Defendant's argument that Plaintiff has not suffered any damages covered by the FMLA, Plaintiff argues that she has indeed suffered actual monetary losses as a direct result of Defendant's violative behavior because she required hospitalization as a direct and proximate result of Defendant's interference with her rights under the FMLA.  *Id.*  Plaintiff notes that her hospitalization resulted in her incurring medical costs and experiencing lost wages.  *Id.*  Plaintiff argues that, contrary to Defendant's assertion, her hospitalization was not a "non-compensable 'work-related personal injury' because [she] has not claimed to have been injured on the job, but to have suffered a major medical condition as a result of Defendant's refusal to allow her to seek medical treatment at the time recommended by her treating physicians."  *Id.*  Plaintiff maintains, therefore, that she has suffered actual monetary damages that are recoverable

under the FMLA.  *Id.*

Regarding Defendant's assertion that Plaintiff failed to allege the required "background circumstances" in order to establish reverse racial discrimination under Title VII or the THRA, Plaintiff responds that she specifically alleged that she was treated worse than her African-American co-workers because she was disciplined for her use of her cellular telephone during work hours despite the fact that she had notified her supervisors that she was expecting a call from her physician, when her African-American co-workers were allowed to use their cellular telephones during work hours for personal reasons including accessing social networks, and they were not counseled or given disciplinary action.  *Id.*  Plaintiff contends that she has "provided a demonstration of 'unequal treatment [via] comparison' by showing more than just Plaintiff's opinion, but an actual and demonstrated manner in which Plaintiff as a Caucasian was treated differently than were her African-American counterparts."  *Id.*

As to Defendant's argument that the adverse actions taken against Plaintiff are "de minimis" and therefore do not rise to the level of an adverse employment action, Plaintiff argues that the discipline to which she was subject has an economic impact and also impacts her status in the eyes of her supervisors and co-workers.  *Id.*  Plaintiff additionally argues that there are "a number of areas that are ripe for discovery in this matter such as whether Caucasians are given equal pay, equal vacation time, etc. which make this matter inappropriate for dismissal at this time."  *Id.*

Finally, with respect to Defendant's argument that Plaintiff failed to assert that she was subject to an adverse employment action due to Defendant's discrimination based on her disability, Plaintiff responds: (1) making her "miss an important medical appointment when

there are others [employees] capable [of] standing in for her resulting in her hospitalization";

(2) preventing her from "advancing or receiving raises due to write ups that are unlawfully placed

in her file in violation of the FMLA"; and (3) "unlawfully removing [her] from her work shift

because she requested a reasonable accommodation in violation of the ADA and TDA" are not

"minor annoyances, but are material and adverse employment actions." *Id.* Plaintiff notes that,

contrary to Defendant's assertion, she "did not ask to be sent home because she was experiencing

pain," rather, she asked "that she be allowed to sit from time to time to allow her joints to rest

and give her time to recover from the ongoing pain she experiences as the result of rheumatoid

arthritis." *Id.*

     For the reasons discussed below, the undersigned recommends that Defendant's Partial

Motion to Dismiss the Amended Complaint (Docket No. 19) be GRANTED IN PART and

DENIED IN PART.

## II.  Law and Analysis

### A.  Motion to Dismiss - Fed. R. Civ. P. 12(b)(6)

     Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim

upon which relief can be granted.  In order to state a claim upon which relief can be granted, a

complaint must contain either direct or inferential allegations respecting all material elements to

sustain a recovery under some viable legal theory.  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir.

2005).  Conclusory allegations or legal conclusions masquerading as factual allegations will not

suffice.  *Id.*  A complaint containing a statement of facts that merely creates a suspicion of a

legally cognizable right of action is insufficient.  *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955,

1965 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the

speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965,

1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th

Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate

standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First,
> the tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of the cause of action,
> supported by mere conclusory statements, do not suffice . . . . Rule
> 8 marks a notable and generous departure from the hyper-technical,
> code-pleading regime of a prior era, but it does not unlock the
> doors of discovery for plaintiff armed with nothing more than
> conclusions. Second, only a complaint that states a plausible claim
> for relief survives a motion to dismiss . . . . Determining whether a
> complaint states a plausible claim for relief will, as the Court of
> Appeals observed, be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common
> sense. . . . But where the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct, the
> complaint has alleged - but it has not "show[n]" - "that the pleader
> is entitled to relief."

556 U.S. at 678-79 (citations omitted).

## B. Title VII of the Civil Rights Act of 1964 - 42 U.S.C. § 2000e

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from

discrimination on the basis of an individual's race, color, religion, sex, or national origin, and

provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or

> otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998) (*citing Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544-45 (6th Cir. 1991)). Thus, as a prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to file a charge of discrimination or retaliation with the EEOC and is precluded from seeking judicial review until the Commission has made a final disposition of his claim. 42 U.S.C. § 2000e-5. *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554, 97 S. Ct. 1885, 1887, 52 L. Ed. 2d 571 (1977). The wording of the allegations in the EEOC charge does not, however, have to be exact or all-encompassing; rather, the court may consider allegations not explicitly stated in the EEOC charge if those allegations could reasonably be expected to grow out of the charge of discrimination. *Tipler v E. I. du Pont de Nemours & Co.*, 433 F.2d 125, 131 (6th Cir. 1971) (*citing Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465-66 (5th Cir. 1970)*; King v. Georgia Power Co.*, 295 F.Supp. 943 (N.D. Ga. 1968)).

In order to establish a prima facie case of discrimination in violation of Title VII, a

plaintiff must show that,

> 1) he or she is a member of a protected class;
>
> 2) he or she was qualified for his or her job and performed it satisfactorily;
>
> 3) despite his or her qualifications and performance, he or she suffered an adverse employment action;[1] and
>
> 4) that he or she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside her protected class.

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  (Footnote added.)

Reverse race discrimination claims "carr[y] a different and more difficult prima facie burden."  *Treadwell v. Am. Airlines, Inc.,* 447 F. App'x 676, 678 (6th Cir. 2011); *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006).  A plaintiff alleging reverse race discrimination must articulate "background circumstances" that "demonstrate[e] that [he or she] was intentionally discriminated against 'despite [his or her] majority status.'"  *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir. 1985) (*quoting Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C. Cir. 1983)).  Statistical evidence or employment policies showing a history of unlawful consideration of race by the employer, evidence that the person responsible for the employment decision was a minority, and evidence of ongoing racial tension in the workplace, can constitute "background circumstances" that could suggest an employer discriminates against the majority.  *Treadwell*,

---

[1] An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

447 F. App'x at 678 (*citing Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003); *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 257 (6th Cir. 2002); and *Boger v. Wayne Cnty.*, 950 F.2d 316, 324-25 (6th Cir. 1991)).

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct evidence approach, once a plaintiff introduces evidence that the employer terminated him or her because of his or her protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination. *Johnson*, 215 F.3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to

articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

## C.  Americans with Disabilities Act of 1990 - 42 U.S.C. § 12111, et seq.

The Americans with Disabilities Act ("ADA") protects employees from discrimination based on their disabilities.  In order to prevail on a claim of unlawful employment discrimination under the ADA, a plaintiff must demonstrate that:

> (1) he or she is, or was perceived as, an individual with a disability;
>
> (2) he or she is otherwise qualified to perform the job requirements either:
>
>> (a) with or without a reasonable accommodation from the employer, or
>>
>> (b) with an alleged "essential" job requirement eliminated; and
>
> (3) he or she suffered an adverse employment action "because of" her disability.

*Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1178 (6th Cir. 1996).  *See also* 42 U.S.C. §§ 12111 and 12112.

**D.  Family and Medical Leave Act - 29 U.S.C. § 2601, et seq.**

The Family and Medical Leave Act ("FMLA") entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  The statute defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  *Id.* at § 2611(11).  An employee seeking to use his or her FMLA leave must notify the employer that FMLA-qualifying leave is needed.  *Arban v. West Publ'g Corp.,* 345 F.3d 390, 400 (6th Cir. 2003); *Brohm v. JH Props., Inc.,* 149 F.3d 517, 523 (6th Cir. 1998).

There are two separate theories of recovery under the FMLA: the "interference" theory and the "retaliation" theory.  *Hoge v. Honda of Am. Mfg., Inc.,* 384 F.3d 238, 244 (6th Cir. 2004).  The "interference" theory is based on 29 U.S.C. § 2615(a)(1), which states that employers cannot "interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided" by the FMLA.  In order to state an FMLA interference claim, a plaintiff must show that:

> (1) he or she was an eligible employee;
>
> (2) the defendant was an employer subject to the FMLA;
>
> (3) he or she was entitled to leave under the FMLA;
>
> (4) he or she provided the defendant with notice of intention to take FMLA leave; and
>
> (5) the defendant denied the plaintiff FMLA benefits to which he or she was entitled.

*Romans v. Mich. Dep't of Human Servs.,* 668 F.3d 826, 840 (6th Cir. 2012).

The "retaliation" or "discrimination" theory arises from 29 U.S.C. § 2615(a)(2), which states that an employer cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must establish that:

>   (1) he or she was engaged in an activity protected by the FMLA;
>
>   (2) the employer knew that the plaintiff was exercising his or her rights under the FMLA;
>
>   (3) after learning of the plaintiff's exercise of FMLA rights, the employer took an adverse employment action against him or her; and
>
>   (4) there was a causal connection between the plaintiff's protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.,* 667 F.3d 757, 761 (6th Cir. 2012); *Killian v. Yorozu Auto. Tenn., Inc.,* 454 F.3d 549, 556 (6th Cir. 2006).

The Sixth Circuit applies the Title VII burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), discussed above, to both FMLA interference and retaliation claims.

**E.  Tennessee Human Rights Act - Tenn. Code Ann. § 4-21-101, et seq.**

"The stated purpose and intent of the Tennessee Human Rights Act ["THRA"] is to provide for execution, within Tennessee, of the policies embodied in the analogous federal anti-discrimination laws." *Weber v. Moses*, 938 S.W.2d 387, 390 (Tenn. 1996) (*citing* Tenn. Code Ann. § 4-21-101(a)(1)). Claims brought under the THRA, therefore, are analyzed in the same manner as those under Title VII, discussed above. *Campbell v. Florida Steele Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996) (finding that analysis "is the same under both the Tennessee Human Rights

Act and Title VII of the Federal Civil Rights Act"); *See also Gee-Thomas v. Cingular Wireless*, 324 F.Supp.2d 875, 881 (M.D. Tenn. 2004) (finding that "the analysis of claims under the THRA is the same as under Title VII").

## F.  Tennessee Disability Act - Tenn. Code Ann. § 8-50-103, et seq.

Discrimination claims under the Tennessee Disability Act ("TDA") are comparable to ADA claims, discussed above, and courts may evaluate them using federal cases interpreting the ADA for guidance. *Barnes v. Goodyear Tire and Rubber Co.*, 48 S.W. 3d 698, 705 (Tenn. 2000).

The TDA is not identical to the ADA, however, as the TDA prohibits discrimination in hiring and firing based solely on any physical, mental, or visual handicap unless that handicap prevents the applicant / employee from performing the duties required by the employment sought or held.  Tenn. Code Ann. § 8-50-103(a).  The language of the TDA differs from that of the ADA insofar as the former does not contain a "reasonable accommodation" element.  In fact, the Tennessee Court of Appeals has repeatedly noted that the Tennessee Code is silent regarding any obligation on the part of any employer to provide a reasonable accommodation and has therefore held that employers are not required to do so under the TDA.  *See, e.g., Anderson v. Ajax Turner Co.*, No. 01A01-9807-CH-00396, 1999 WL 976517, at *4 (Tenn. Ct. App. Oct. 28, 1999); *Pruett v. Wal-Mart Stores, Inc.,* No. 02A01-9610-CH-00266, 1997 WL 729260, at *13 (Tenn. Ct. App. Nov. 25, 1997); *Turner v. Eagle Distributing Co.,* No. 03A01-9209-CH-00338, 1993 WL 88365, at *2 (Tenn. Ct. App. Mar. 29, 1993).  The Tennessee Attorney General is in accord.  *Cf.* 94 Op. Tenn. Att'y Gen. 024, 1994 Tenn. AG LEXIS 24 (Mar. 10, 2004) ("The Tennessee Human Rights Commission should not require reasonable accommodation of a handicapped employee

under the current state law in light of various court opinions holding that the state statute does not require accommodation.").

## G.  The Case at Bar

### 1.  Interference and Retaliation under the FMLA

#### a.  Interference

Plaintiff avers that Defendant interfered with her right to take FMLA leave by making it "difficult or impossible to go to some doctors appointments, despite advance notice," and by "refus[ing] to let her go [to a neurology appointment] because a government review of the program would be occurring that day, even though qualified substitutes were available to cover for her and therefore Defendant's operation would not be affected."  Docket No. 18.  Plaintiff argues that, as a result, she ended up having to go to the emergency room, thereby incurring actual monetary damages in the form of medical bills and lost wages.  *Id.*

Taking the allegations of Plaintiff's Amended Complaint as true, Plaintiff has sufficiently alleged that she was an eligible employee; that Defendant was an employer subject to the FMLA; that she was entitled to leave under the FMLA; that she provided Defendant with notice of intention to take FMLA leave; that Defendant denied her FMLA benefits to which she was entitled; and that as a result of Defendant's denial of those FMLA benefits, she suffered actual monetary damages.  Accordingly, Defendant's Motion to Dismiss Plaintiff's FMLA interference claims should be DENIED and these claims should be permitted to proceed.

#### b.  Retaliation

Plaintiff avers that she was written-up twice, sent home, and "disciplined" in retaliation for attempting to exercise her rights under the FMLA.  Docket No. 18.  Specifically, Plaintiff

avers that she was: (1) written-up twice for taking too many days off work to go to doctors' appointments; (2) sent home when, as a result of joint pain, she requested "minor, brief assistance" during toothbrushing time for the children; and (3) "disciplined" for taking telephone calls from her physicians during work hours, even when she had informed Defendant that she was expecting the calls. *Id.*

As discussed above, in order to establish her retaliation claim under the FMLA, Plaintiff must establish that: she was engaged in an activity protected by the FMLA; Defendant knew that she was exercising her FMLA rights; after learning of her exercise of FMLA rights, Defendant took an adverse employment action against her; and there was a causal connection between Plaintiff's protected FMLA activity and the adverse employment action. The allegations of Plaintiff's Amended Complaint establish that she was engaging in protected activity; that Defendant knew she was exercising her FMLA rights; that Defendant wrote her up twice, sent her home, and "disciplined" her; and that Defendant did so because she was she was exercising her FMLA rights. The issue is whether writing Plaintiff up twice, sending her home, and "disciplining" her constitutes adverse employment actions, as that concept is defined.

An adverse employment action is defined as one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis*, 97 F.3d at 885-86. Plaintiff argues that "corrective measures" such as being written-up twice, sent home, and "disciplined," sufficiently constitute adverse employment actions because they have "the actual effect of counting against her in upcoming discussions about raises, transfers, promotions, and make[] her more likely than someone without write-ups

to be terminated if the need should arise." Docket No. 18. Plaintiff asserts that "the impact is both real *and* economic." *Id.* (Emphasis original.)

While Plaintiff makes a valid point that the "corrective measures" could count against her in upcoming discussions about raises, transfers, and promotions, and could make her more likely to be terminated than those employees who have not experienced any "corrective measures," at the time of the filing of Plaintiff's Amended Complaint, Plaintiff had not yet suffered any such consequence. Thus, although being written-up twice, sent home, and "disciplined" have the possibility of leading to an adverse employment action as that concept is defined, they, standing alone, do not so constitute. Absent the establishment of an adverse employment action, Plaintiff cannot sustain her FMLA retaliation claim, and Defendant's Motion should be GRANTED on this claim.

### 2. Reverse Race Discrimination under Title VII and/or the THRA

Plaintiff avers that she was treated differently than her African-American co-workers. Docket No. 18. Specifically, she avers that she was disciplined for taking telephone calls from her physicians during work hours, while her African-American co-workers were not disciplined for using their cellular telephones throughout their work shift for personal things, including accessing social networks. *Id.* Plaintiff also avers that she was sent home when she asked for assistance, but that other employees are not sent home when they ask for assistance. *Id.*

As discussed above, in order to sustain her claim for reverse race discrimination, Plaintiff must articulate "background circumstances" that "demonstrate[e] that [she] was intentionally discriminated against 'despite [her] majority status.'" *Murray,* 770 F.2d at 67 (*quoting Lanphear*, 703 F.2d at 1315). Examples of "background circumstances" that could suggest that

an employer discriminates against the majority include: statistical evidence or employment policies showing a history of unlawful consideration of race by the employer, evidence that the person responsible for the employment decision was a minority, and evidence of ongoing racial tension in the workplace. *Treadwell*, 447 F. App'x at 678 (*citing Sutherland*, 344 F.3d at 615; *Zambetti*, 314 F.3d at 257; and *Boger*, 950 F.2d at 324-25).

The examples offered by Plaintiff as her requisite "background circumstances" are not sufficient to demonstrate that she was "intentionally discriminated against 'despite [her] majority status.'" Accordingly, Plaintiff cannot sustain her reverse race discrimination claims under Title VII and/or the THRA, and Defendant's Motion should be GRANTED with respect to those claims.

### 3. Disability Discrimination under the TDA

Plaintiff avers that she was discriminated against because of her actual or perceived disability. Docket No. 18. She additionally avers that she suffered damages as a result. *Id.*

As discussed above, disability discrimination claims under the TDA mirror those brought under the ADA, but without the reasonable accommodation provision. Accordingly, one element that Plaintiff must establish in order to sustain her TDA claim, is that she suffered an adverse employment action. As set forth in the discussion of Plaintiff's FMLA retaliation claim above, Plaintiff cannot so establish. Plaintiff cannot, therefore, sustain her TDA claim, and Defendant's Motion should be GRANTED on this count.

### III.  Conclusion

For the reasons discussed above, the undersigned recommends that Defendant's "Partial Motion to Dismiss the Amended Complaint" (Docket No. 19) be GRANTED IN PART and

DENIED IN PART.  Specifically, the undersigned recommends that Defendant's Motion be GRANTED with respect to Plaintiff's FMLA retaliation claims, Title VII and THRA reverse race discrimination claims, and TDA claims, but DENIED in all other regards.  The undersigned therefore recommends that Plaintiff's FMLA interference and ADA claims be permitted to proceed.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


_____
E. CLIFTON KNOWLES
United States Magistrate Judge